Inhabitants of Northampton & others *v.* Smith & others.

### Inhabitants of Northampton & others *vs.* Samuel Smith & others.

A testator bequeathed money to trustees, to be managed as an accumulating fund, for the term of sixty years, and then to be paid by them to the town of N., or its duly appointed agents, for the purpose of purchasing land within the town for a pattern farm, to be so improved, in practical details, as to become a model to farmers generally. *Held*, that the town was entitled to appeal from a decree of the judge of probate respecting the testator's will.

A bequest of money to trustees, to be devoted to the use and benefit of indigent persons in certain towns, does not make a judge of probate, who is an inhabitant of one of those towns, interested in the probate of the will which contains the bequest, so as to authorize him to transfer the case, under the Rev. Sts. *c.* 83, § 15, to the probate court of another county.

Oliver Smith of Hatfield, by the third section of his last will, directed that a board of trustees should be established, and should have the custody, control and management of the funds hereinafter mentioned, and carry into effect the provisions of his will in relation to those funds; and that the said board should be appointed and constituted in manner following : " The several towns of Northampton, Hadley, Hatfield, Amherst and Williamsburgh, in the county of Hampshire, and Deerfield, Greenfield and Whately, in the county of Franklin, shall annually in the month of March or April, at a legal town meeting, (an article to that effect being inserted in the warrant therefor,) choose one person, being an inhabitant thereof, as agent for said town, to be called an elector. And the several electors thus chosen, such choice being duly certified, shall meet at Northampton on the first Wednesday in May annually, and shall then and there elect, by a majority of votes given in, three suitable persons to act as trustees of said funds; and the persons thus elected shall constitute the board

of trustees, and shall hold their office for one year, and until others are chosen in their stead."

By the fourth section of the will, the said Oliver gave to Austin Smith, his executor, in trust for the uses and purposes specified in the will, the sum of two hundred thousand dollars, to be secured at interest, and managed, as an accumulating fund, by the said Austin, until the board of trustees, provided for in the preceding section, should be duly constituted and organized; and upon the due organization of said board, they were to demand and receive of said Austin the aforesaid sum, and all interest and income that should have accrued thereon, "to be by them at all times secured and kept at interest, according to their best discretion, and managed as one entire fund, and the interest thereof annually added to the principal, thus forming an accumulating fund, without allowing any subtraction of either principal or interest therefrom, until the said principal and interest" should "amount to the full sum of four hundred thousand dollars." And when the said fund should amount to $400,000, the testator directed that the said board of trustees should " divide the same into three distinct and separate portions, as follows; viz. one portion of thirty thousand dollars for an agricultural school in Northampton; one portion of ten thousand dollars for the use of the American Colonization Society; one portion of three hundred and sixty thousand dollars for the various uses and purposes " afterwards specified in the will; to " be always managed and improved, by the said trustees, as distinct and separate funds."

The testator directed the said trustees to manage the said fund of thirty thousand dollars as an accumulating fund, by annually adding the interest thereof to the principal, until the expiration of the full term of sixty years from his decease, and then " to pay over to the town of Northampton, out of the principal fund, such amount thereof as " might " be thought necessary and proper by said town, or its duly appointed agents, for the purpose, in the first place, of purchasing a farm, or a tract of land for a farm, within the limits of the said town, for a pattern farm, to be so improved in practical

details as to become a model, so far as can be effected by time and experience, to farmers generally.   And in the second place, for the purpose of purchasing another farm, or tract of land for a farm, as near to said pattern farm as may be, within said town, to be designed for an experimental farm, to aid and assist the labors and improvements of the pattern farm in the art and science of husbandry and agriculture," &c. &c.

The aforesaid fund of three hundred and sixty thousand dollars was directed, by the testator, to be " devoted to the use and benefit, *first*, of indigent boys; *secondly*, of indigent female children ; *thirdly*, of indigent young women ; and *fourthly*, of indigent widows," within the beforementioned towns of Northampton, Hadley, Hatfield, Amherst, Williamsburgh, Deerfield, Greenfield and Whately.   And the testator further directed, that if there should, at any time, be a surplus of the income arising from each or any of these appropriations, and beyond the actual or probable claim on each, respectively, from the eight towns aforesaid, then the trustees might apply such surplus " to the use of beneficiaries selected from the remaining towns in the county of Hampshire, or either of them."

This will was presented for probate to the judge of probate for the county of Hampshire, who declined to take jurisdiction, by reason of the bequests made, in said will, to the several towns therein mentioned, including the town of Amherst, of which he was an inhabitant, and ordered and decreed that the case should be transferred to the probate court of the most ancient adjoining county, to wit, the county of Worcester.   From this order and decree the towns of Northampton, Hadley, Deerfield, Greenfield, Whately and Williamsburgh. appealed to this court.

*Baker & Aiken*, for the appellants.

*Huntington & C. F. Smith*, for the appellees.

SHAW, C. J.*   This was an appeal from the decree of the judge of probate of the county of Hampshire, by which he declined, on account of interest, to take jurisdiction of the

* *Dewey*, J. did not sit in this case.

probate of the will of Oliver Smith, late of Hatfield, and directed the proceedings upon the said will to be transferred to the court of probate of the county of Worcester, being the most ancient adjoining county. This objection is founded on the provision of the Rev. Sts. *c.* 83, § 15, directing that when a judge of probate shall be interested in any case within his jurisdiction, the case shall be transferred to the probate court of the most ancient adjoining county. The interest of the judge was supposed to arise from the fact, that he was one of the inhabitants of the town of Amherst; that there were, in this will, many bequests to charitable purposes, for the use and benefit of classes of persons described as dwelling in eight towns enumerated, of which towns Amherst is one; that if those bequests were beneficial to these towns, they had an interest, in their corporate capacity, in establishing the bequests, and of course in proving the will; and that by means thereof, Mr. Conkey, the judge of probate, as an inhabitant of Amherst and a member of the corporation, had a derivative interest in the same bequests.

I. A preliminary motion is made, by the respondents, to this court, to dismiss this appeal, on the ground that the inhabitants of the six towns, who claimed the appeal, had no interest in the will, and were not aggrieved parties, within the meaning of the law, (Rev. Sts. *c.* 70, § 36; *c.* 83, § 34;) entitled to an appeal. The town of Amherst is not one of those that claimed this appeal.

Without considering, at present, the case of other towns named in the will, we find, in looking into the will, a large pecuniary bequest, payable at a future and distant day, directly to the inhabitants of Northampton, in their corporate capacity. This, it is true, is in trust to establish certain agricultural institutions; but as the legal estate must vest in the town, and as they have perpetual succession as a corporation, we think the corporation has now such an interest in said will, as warranted them in an appeal from a decree declining to admit it to probate. And if any one of the parties, claiming an appeal, had a right to do so, then the whole case is removed, and this court, as the appellate court, has jurisdiction.

It is said to be immaterial to these towns, whether the will is offered for probate in Hampshire or in Worcester. If they have an interest in establishing the will, they have an interest in having it before a court that has competent jurisdiction to give it effect. One only of these courts can rightfully have that jurisdiction; and contending, as they do, that the probate court of this county has the rightful jurisdiction, they thereby deny that the probate court of Worcester has that jurisdiction, and they have an interest in having that question definitively settled, according to law.

II. But the great question, and the one raised on the appeal, is, whether the judge of probate, as an inhabitant of the town of Amherst, and a member of that municipal corporation, had such an interest in this will, within the meaning of the statute, as to supersede his jurisdiction of the probate of the will, and transfer it to another county.

It is true that the plain dictates of natural justice, independently of all articles of *magna charta,* bills of rights, or other provisions of positive law, require that a man shall not be judge in his own cause. And it is only a just application of this principle, that he shall not sit in judgment in deciding a question, in which he has a personal interest. But this, like all other very general propositions, in order to make it the basis of a practical rule, must have a reasonable construction, and must be taken, not as absolute and invariable, but with all necessary and implied qualifications. If the term "interest" were used in the loose sense it sometimes is, consisting in a strong and sincere desire to promote all enterprises for the advancement of learning, philanthropy, and general charity, or a similar interest, with all good men, to repress and put down pernicious and mischievous schemes, no man could be found, fit to be intrusted with the administration of justice; for no man can be exempt from such interests. But, even where there are pecuniary interests, there must be some exceptions; as when the Commonwealth is a party in a criminal prosecution or a penal action, where the penalty enures to the State, and all civil suits on recognizances and other debts,

or for the recovery of property, every citizen has a pecuniary interest. And yet none but citizens can be judges. Our own declaration of rights has made some approximation towards a limitation of the generality of the maxim, by declaring (art. 29) that " it is the right of every citizen to be tried by judges as free, impartial and independent, as the lot of humanity will admit." It is obvious that no nearer approximation to the rule of absolute impartiality can be made, by any system of laws. .

We are then to consider what is the nature of the interest, intended by Rev. Sts. *c.* 83, § 15, which shall take the case out of the jurisdiction of the judge of probate, and transfer it to the court of probate of an adjoining county.

1. We think it is not to be a mere possible, contingent interest ; not an interest in the question or general subject, to which the matter requiring adjudication relates ; but one that is visible, demonstrable, and capable of precise proof. *Cottle, Appellant,* 5 Pick. 483. *Sigourney* v. *Sibley,* 21 Pick. 101, and 22 Pick. 507. It is not the bias or prejudice which would be sufficient to set aside a juror. *Davis* v. *Allen,* 11 Pick. 466. It is to be considered that such an interest, in the judge of probate, is not only to oust him of his jurisdiction, but is to confer jurisdiction on another court of probate, which otherwise would not have it. It must therefore depend upon facts capable of being precisely averred and proved, and thus put in issue and tried. The importance of this consideration will be appreciated, when it is considered, that if jurisdiction is taken by a probate court, not entitled to it by law, the entire proceedings are void ; the practical consequences of which may be extensively injurious. *Holyoke* v. *Haskins,* 5 Pick. 20. *Coffin* v. *Cottle,* 9 Pick. 287.

2. It must be a pecuniary or proprietary interest, a relation by which, as a debtor or creditor, an heir or legatee, or otherwise, he will gain or lose something by the result of the proceedings, in contradistinction to an interest of feeling, or sympathy, or bias, which would disqualify a juror. *Smith* v. *Bradstreet,* 16 Pick. 264.

3. It must be certain, and not merely possible or contingent.

*Hawes* v. *Humphrey*, 9 Pick. 350. *Wilbraham* v. *County Commissioners*, 11 Pick. 322. *Danvers* v. *County Commissioners*, 2 Met. 185. It must be direct and personal, though such a personal interest may result from a relation, which the judge holds as the member of a town, parish or other corporation, where it is not otherwise provided by law, if such corporation has a pecuniary or proprietary interest in the proceedings.

It may be, and probably is, very true, as the human mind is constituted, that an interest in a question or subject matter, arising from feeling and sympathy, may be more efficacious in influencing the judgment, than even a pecuniary interest; but an interest of such a character would be too vague to serve as a test by which to decide so important a question as that of jurisdiction; it would not be capable of precise averment, demonstration and proof; not visible, tangible, or susceptible of being put in issue and tried; and therefore not certain enough to afford a practical rule of action. It is like the principle applying to the case of the competency of a witness; a direct pecuniary interest, however small, on being proved, renders him incompetent; but the strongest interest from sympathy, from interest in the question, and even an expected interest in the property in controversy, not yet vested, does not render him incompetent.

On examining this will of Oliver Smith, we cannot perceive that it vests any pecuniary interest, legal or beneficial, in the towns named, other than Northampton. The will provides for the future annual distribution of considerable sums of money, in charity, for the relief and assistance of various classes of indigent persons to be selected from those residing within the limits of these towns. But the distribution of a sum of money within the limits of a town, although it may give a spring to business, and indirectly benefit the inhabitants, as members of society, and holders of property, yet is not a direct pecuniary interest to the town in its corporate capacity, through which its members derive a pecuniary interest. And although it may be said, in a loose sense, that

such a provision for various classes of persons, and the distribution of so much money, would be of great benefit to the town, and although the inhabitants of such town would feel strongly inclined to aid in promoting and establishing such a charity, and even be willing to pay money in securing it, yet, when strictly considered, it means only that such an establishment would be useful and beneficial to the dwellers in such town ; not that it would confer any corporate right upon the town. It affords no direct or necessary exemption from taxes. It is the same interest which the inhabitants of a town often feel and manifest in the establishment of a college, academy, hospital, and even a court house and jail, within their limits.

The court are therefore of opinion, that the town of Amherst, as a municipal corporation, in its corporate capacity, takes no pecuniary interest, legal or beneficial, under this will, and that, of course, Mr. Conkey, judge of probate, as an inhabitant of that town, takes no such interest ; that he is not prevented from taking jurisdiction of the probate of this will ; and that no other probate court of the Commonwealth can take jurisdiction of it.

The decree of the probate court is reversed, and the case remitted to that court, for further proceedings, in the probate of said will, and the settlement of the said Oliver Smith's estate.